IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NATHANIEL DAWSON                    :
                                    :
        Plaintiff,                  :       CIVIL ACTION 09-0780-KD-M
                                    :
v.                                  :
                                    :
GRANTT CULLIVER, et al.,            :
                                    :
        Defendants.                 :

REPORT AND RECOMMENDATION

Nathaniel Dawson, an Alabama prison inmate proceeding *pro
se* and *in forma pauperis*, filed a Complaint (Doc. 1) under 42
U.S.C. §1983.   This action was referred to the undersigned
pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4),
and is now before the undersigned.  For the reasons stated
below, it is recommended that the motion for summary judgment of
Defendants Grantt Culliver (Senior Warden)("Culliver"), Richard
Allen (Commissioner of the Alabama Department of Corrections)
("Allen"), Mark Capshaw (Alabama Department of Corrections
Officer)("Capshaw"), and David Craft (Alabama Department of
Corrections Captain)("Craft") be granted, and that Plaintiff's
claims against these Defendants be dismissed.

I.    SUMMARY OF FACTUAL ALLEGATIONS

1.   From its review of the record, the Court summarizes
the parties' allegations that are material to the issues

1

addressed in this Report and Recommendation, and find the following as fact.

2.    The Holman Correctional Facility ("Holman") in Housing Unit E assigns at least one correctional officer to be on duty at a given time for the indoor and outdoor components of that Unit (*see* Doc. 1, pp. 9-10).

3.    On December 9, 2007, while incarcerated at Holman in Housing Unit E, Plaintiff was attacked by a fellow inmate (Doc. 1, pp. 7-8, 11; Doc. 30, p. 3).

4.    Specifically, at approximately 5:30 p.m., inmate Nathaniel Hayes ("Hayes"), approached Plaintiff from behind and cut the Plaintiff's neck (Doc. 1, pp. 11-12; Doc. 30, p. 3).  At first Plaintiff did not know and did not see the attacker until he turned around (*see* Doc. 1, p. 11).

5.    Plaintiff saw that his attacker was Hayes, realized he was bleeding, and went to look for help (Doc. 1, p. 12). Plaintiff found the on-duty correctional officer, Defendant Capshaw, upon opening a gate (*Id.*).

6.    At the time of the attack, Defendant Capshaw was conducting an outside security check (Doc. 30-1, p. 3).  He heard a commotion, discovered Plaintiff had been attacked, called for help for the Plaintiff on an in-house radio, and

began investigating Unit E to find out who attacked the Plaintiff (Doc. 30, pp. 4-5; Doc. 30-1, p. 3).

7.  Upon entering Unit E, Defendant Capshaw and an accompanying officer, Anthony Stonewall, observed that Hayes was "acting irrationally and cursing at other inmates while in his assigned bed" (Doc. 30, p. 5). Hayes later admitted to cutting the Plaintiff[1] (Doc. 30-1, p. 5).

8.  Meanwhile, Plaintiff was taken to the Atmore Community Hospital, and then transferred to USA Medical Center in Mobile by helicopter (Doc. 30, p. 5; Doc. 30-3, p. 205).

9.  At the time prior of the attack, Plaintiff did not have any known enemies at Holman (Doc. 30-1, p. 19; Doc 42-1, p. 2; *see* Doc. 1, p. 11)

10.  On December 1, 2009, Plaintiff filed the present § 1983 action asserting an Eighth Amendment[2] claim against Defendants Culliver, Allen, Capshaw, and Craft (Doc. 1).

---

[1] In Defendant's Special Report, it is set forth that when questioned by Lieutenant Joseph Raines, Hayes stated that Plaintiff tried to trick Hayes into performing a sexual act, and Hayes responded by cutting Plaintiff with a prison made box cutter (*see* Doc. 30, p. 5). However, in Defendant Capshaw's affidavit, it states that he was told that Hayes intended to attack "Mr. Steele, but attacked Mr. Dawson by mistake" (Doc. 42-1, p. 2).

[2] The Court notes that the Plaintiff cites to the Fourteenth Amendment and uses the words due process; however, the Court construes the pleadings so that the Plaintiff consistently makes
(Continued)

11.  Plaintiff claims that the Defendants failed to protect him from the assault by inmate Hayes since the policies in place at Holman create a substantial risk "that inmates who are not within the sight of the Officer assigned [] may be jeopardized" and that they knew about the security and understaffing problems which led to safety risks (Doc. 1, p. 10).  Plaintiff also claims that the overcrowding, living space of "30 by 74 inches," and mixed prison population of mentally disturbed and non-mentally disturbed inmates in Unit E creates a substantial risk of harm in violation of the Eighth Amendment (Doc. 1, pp. 10-15).  Additionally, Plaintiff asserts as follows, in his response:

> Holman since it was built in 1969, has had a torturous history. However, its history cannot compare to the inmate on inmate violence that has occurred at Holman in the five years preceding the violent attack on Mr. Dawson in the instant case. (this court may take judicial notice of its own records, and Mr. Dawson request that it take judice notice of Jody O'Neal Harrison v. Grantt Culliver et al. Collecting incident of viol[ence] at Holman)[.]

(Doc. 49, p. 5).  The Court notes that within the Plaintiff's pleadings, the only action specifically identified is that of *Jody O'Neal Harrison v. Grantt Culliver et al.* (*see* Doc. 49, p.

---

an Eighth Amendment claim since no logical Fourteenth Amendment violation has been articulated.

5).  Upon a search of this case in the CM/ECF database the following associated action number was found: 1:09-cv-00283-KD-C.  While the plaintiff, Jody O'Neal Harrison in 1:09-cv-00283-KD-C also makes a failure to protect claim in violation of his constitutional rights, Harrison's attack occurred *after* Plaintiff Dawson's attack and does not constitute evidence of prevalent inmate-on-inmate violence in the years preceding Plaintiff Dawson's attack.[3]

12.  Plaintiff seeks compensatory, punitive, discretionary, general, future damages, and any other relief deemed just and appropriate by the Court (Doc. 1, pp. 17-18).

13.  In the Answer and Special Report of Defendants Culliver, Allen, and Craft filed on October 29, 2010, they deny violating Plaintiff's constitutional rights and assert the defenses of absolute and qualified immunity (Docs. 30-31).

---

[3] Additionally, the Plaintiff attached an affidavit by Michael N. Norris, who appears to be another inmate who witnessed the attack on Plaintiff by inmate Hayes (Doc. 49, p. 10).  In the affidavit, Mr. Norris states that he feels that had Defendant "Capshaw been in E-Unit [the attack] might very well never have happened" (Doc. 49, p. 10).  However, this opinion does not present evidence that there were many inmate-on-inmate instances of violence during the time preceding the attack on Plaintiff, but rather echoes Plaintiff's claim of understaffing and/or bad protocol since Defendant Capshaw was not required to be present inside of E-Unit at all times.

14.  On January 12, 2011, all Defendants filed an Amended Special Report wherein they denied violating Plaintiff's constitutional rights and assert the defenses of absolute and qualified immunity (Doc. 42).

15.  On February 28, 2011, the Court entered an Order converting the Answer and Special Reports (Docs. 30, 31, 42) to a motion for summary judgment (Doc. 48).

16.  That motion and Plaintiff's opposition (Doc. 49) thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.

2. It is well-established that summary judgment is proper-consistent with Federal Rule of Civil Procedure 56(c)-"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

3. The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

4. However, Rule 56(e) states that:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

5. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

6. "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Custom Mfg. & Eng'g,*

7

*Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007)

(citations omitted).

### III. DISCUSSION

1. As set out above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of an attack by another inmate (Doc. 1).

2. Specifically, Plaintiff alleges that the Defendants violated his Eighth Amendment rights by failing to protect him from the attack by inmate Hayes (Doc. 1).

3. Defendants deny that they violated Plaintiff's constitutional rights and further assert the defenses of absolute and qualified immunity (Docs. 30, 31, 42).

4. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

5. The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

8

6. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

7. In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200 (citations omitted).

8. In order to prevail on his Eighth Amendment claim, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, *Williams v.*

*Bennett*, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

9. In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

*Id*. at 983 (citation omitted).

10. The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." *LaMarca*, 995 F.2d at 1535.

11. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

12. The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . ., but must be balanced against competing penological goals." *LaMarca*, 995 F.2d at 1535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

13. The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a

sufficiently culpable state of mind." *Sims*, 25 F.3d at 983-84

(citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

14. This component "follows from the principle that 'only

the unnecessary and wanton infliction of pain implicates the

Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quotation and

citation omitted).

15. In prison condition cases, the required state of mind

for a defendant is "deliberate indifference" to an inmate's

health or safety. *Id*. (citations omitted).

16. In defining "deliberate indifference," the Supreme

Court in *Farmer* stated:

> We hold . . . that a prison official cannot be found
> liable under the Eighth Amendment for denying an
> inmate humane conditions of confinement unless the
> official knows of and disregards an excessive risk to
> inmate health or safety; the official must both be
> aware of facts from which the inference could be drawn
> that a substantial risk of serious harm exists, and he
> must also draw the inference.

*Farmer*, 511 U.S. at 837.

17. The court concluded that the "subjective recklessness"

standard of criminal law is the test for "deliberate

indifference" under the Eighth Amendment. *Id*. at 839-40.

18. There is no liability for "an official's failure to

alleviate a significant risk that he should have perceived but

did not. . . ." *Farmer*, 511 U.S. at 838.

19. It is not enough that a plaintiff proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).

20. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 844-45 (citations omitted).

21. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id*.

22. Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court.

23. In his Complaint, Plaintiff claims that all of the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from the attack by inmate Hayes (*see* Doc. 1).

24. Plaintiff asserts that Defendant Capshaw was assigned to Unit E and never saw the attack because Capshaw failed "to remain on and at his assigned Post, because of Staff shortages

[which] amounted to Deliberate indifference in violation of ... the 14th Amendment" (Doc. 1, p. 13).

25. In addition, Plaintiff claims that the Defendants violated his constitutional rights since they were and continue to be deliberately indifferent to the long standing and serious risk of "Inmate on Inmate Assault at Holman Prison" and have failed to address the staffing, overcrowding, and the mixed prison population of mentally disturbed and non-mentally disturbed inmates issues (Doc. 1, pp. 13-14).

26. As discussed above, the evidence shows that at the time of the attack, inmate Hayes attacked the Plaintiff from behind, and cut Plaintiff's throat while the only on-duty officer in Unit-E, Defendant Capshaw, was outside (Doc. 1, pp. 11-12).

27. Plaintiff went to seek help after realizing he was bleeding, and Defendant Capshaw headed in the direction of the sounds of the commotion to see what was going on (Doc. 1, p. 12; Doc. 42-1, p. 2). Upon seeing the Plaintiff, Defendant Capshaw called into his radio for help (Doc. 42-1, p. 2). The Plaintiff was taken to the hospital, and Defendant Capshaw investigated Unit-E to determine who the attacker was (Doc. 42-1, p. 2). From his odd behavior, inmate Hayes was questioned and determined to be the attacker (*see id*.).

28.  Plaintiff has not stated that Hayes was a known enemy, and the Defendants were not aware that Hayes was an enemy of the Plaintiff (Doc. 42-1, p. 2; Doc. 42, pp. 9-10). In fact, he was not.  Also, the Defendants were not aware and had no reason to be aware that Hayes would attack the Plaintiff (Doc. 42-1, p. 2; Doc. 42, pp. 9-10).  Moreover, Plaintiff did not seem to know that Hayes was his attacker since he did not know Hayes attacked him until he turned around once the attack had started (Doc. 1, p. 11).

29.  Additionally, Plaintiff has not presented evidence demonstrating that there was a constant threat of violence at Holman nor that the Defendants knew of a constant threat.

30.  In order to establish the objective element of an Eighth Amendment claim in a failure to protect case, an inmate must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

31.  It is settled that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm. . . ."  *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) ("confinement in a prison where violence and terror reign is actionable.").

32.  On the other hand, even "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." *Purcell*, 400 F.3d at 1320 (citations omitted).

33.  "[A] prison custodian is not the guarantor of a prisoner's safety." *Purcell*, 400 F.3d at 1321 (citations omitted).  "[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

34.  As discussed above, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." *Farmer*, 511 U.S. at 844.

35.  In the present case, Plaintiff has not established that he was exposed to the "constant threat of violence" while incarcerated at Holman, *see Purcell*, 400 F.3d at 1320, or to any other condition that presented "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *see also Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995) ("Hale produced evidence that inmate-on-inmate violence occurred regularly" in the two years preceding the attack).  Therefore, Plaintiff has failed to satisfy the objective element of his Eighth Amendment claim.

36. However, assuming, arguendo, that Plaintiff did satisfy the objective element of his Eighth Amendment claim, he must also show that Defendants were deliberately indifferent to the risk of serious harm to him.

37. To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of serious harm existed, and they "knowingly or recklessly" declined to take action to prevent that harm. *LaMarca*, 995 F.2d at 1537.

38. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

39. "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Hale*, 50 F.3d at 1583 (citation and quotation omitted). "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id*. Specifically in *Hale*, the prisoner plaintiff

> "presented depositions, affidavits and other evidence supporting a finding that [the defendant] subjectively knew that a substantial risk of serious harm existed at the jail. For example, [a defendant] himself testified in deposition that he knew that inmate-on-inmate violence was occurring on a regular basis

during May 1990 and other periods of overcrowding;
[the defendant] also testified that he knew the
violence sometimes resulted in injuries requiring
medical treatment. Additionally, [plaintiff]'s expert
attested that given the conditions existing in the
months preceding May 1990, it was plainly foreseeable
to a reasonable law enforcement official that a
violent attack was likely to occur."

*Id.* at 1582.

40.  In this case, Plaintiff has presented no evidence that
any of the Defendants knew of a substantial risk of serious harm
to Plaintiff and was deliberately indifferent to that risk.
Unlike the plaintiff in *Hale*, the Plaintiff here has not
provided evidence of depositions, affidavits, or other evidence
showing that the Defendants knew of inmate-on-inmate violence
occurring on a regular basis during the time period prior to
Plaintiff's attack.  *See Hale*, 50 F.3d at 1582.

41.  Moreover, Plaintiff has presented no evidence that any
Defendant was aware of a risk of harm to Plaintiff from inmate
Hayes in particular.  There is no evidence, nor even an
allegation, that Hayes, or any other inmate, had made threats
against the Plaintiff and that these threats had been made known
to any of the Defendants.

42.  Even Plaintiff was unaware that he was in danger of
being attacked by inmate Hayes and did not know who his attacker
was until he turned around (*see* Doc. 1, p. 11).

17

43.  Neither Plaintiff nor Defendants had any reason to suspect that Plaintiff was in danger of being attacked or that he needed to be segregated from inmate Hayes for protection.

44. Because Plaintiff has failed to show that any of the Defendants knew that a substantial risk of serious harm existed and they knowingly or recklessly declined to take action to prevent that harm, he has failed to satisfy the subjective element of his Eighth Amendment claim as well.  Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment failure to protect claim.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants Grantt Culliver (Senior Warden), Richard Allen (Commissioner of the Alabama Department of Corrections), Mark Capshaw (Alabama Department of Corrections Officer), and David Craft (Alabama Department of Corrections Captain) are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be GRANTED, that this action be DISMISSED with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 3rd day of August, 2011.

<u>s/BERT W. MILLING, JR.</u>
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.   *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed.R.Civ.P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***. Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.